# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

RANDY'S TOWING, LLC, a Michigan limited
liability company

      Plaintiffs,

vs.                                    Case No. 25-cv-

TAWAS CITY, TAWAS CITY POLICE DEPARTMENT,
and MATTHEW KLOSOWSKI-LORENZ, in his
individual capacity as Chief of Police of Tawas City;

      Defendants.

_____/

JAMES R. AUSTIN (P-43400)
Corcoran Austin, P.C.
Attorneys for Plaintiff
6880 Thayer Lake Dr.
Alden, MI  49612
248-909-4752
jaustin@jaustinlaw.com

_____/

## **COMPLAINT**

NOW COME Plaintiff, Randy's Towing, LLC, by and through their attorneys, Corcoran Austin, PC, and for their Complaint against Tawas City, the Tawas City Police Department and Matthew Klosowski-Lorenz, state as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1.     Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1343, and 1367; and the Declaratory Judgment Act, 28 U.S.C. § 2201, et. seq. Plaintiff's related state law claims are brought pursuant to MCL 2.605,

MCL 257.252a, et seq., tortious and intentional interference with business relationship or expectancy, and violation of exclusive remedies provision of MCL 257.252e(4).

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367.

3.     This Court has jurisdiction to render and issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

4.     Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391 because Plaintiff conducts business in the Eastern District of Michigan, and the actions giving rise to this Complaint occurred within the Eastern District of Michigan.

5.     Jurisdiction is otherwise proper in this Court as damages exceed $75,000.

## PARTIES

6.     Plaintiff Randy's Towing, LLC is a Michigan limited liability company in good standing with business offices located at 303 Elms Ave, Tawas City, Michigan.

7.     Defendant Tawas City is a municipal corporation duly incorporated under the laws of the State of Michigan.

8.     The Tawas City Police Department ("TCPD") is a department of Defendant Tawas City.

9.     Matthew Klosowski-Lorenz("Klosowski-Lorenz") is the Chief of Police of the TCPD, and upon information and belief, is a resident of Tawas City, Michigan.

## GENERAL AVERMENTS

10.     Plaintiff realleges and incorporates by reference paragraphs 1 through 9 of its Complaint.

11.     Plaintiff runs a towing, wrecker and recovery business, serving most of Northeastern Michigan, including, but not limited to, Iosco County and Tawas City.

### Failure to Process Private Property Impound Vehicles

12.     As a regular part of its business, Plaintiff provides private property impound services, removing vehicles that have remained on private property without the consent of the property owner pursuant to MCL 257.252a(10).

13.     MCL 257.252a(10) states:

> If a vehicle has remained on private property without the consent of the property owner, the owner of the private property may have the vehicle taken into custody as an abandoned vehicle by contacting a local towing agency. A local towing agency is considered a towing agency whose storage lot is located within 15 miles from the border of the local unit of government having jurisdiction over the abandoned vehicle.

14.    MCL 257.252a(11) states:

Before removing the vehicle from private property, the towing agency shall provide notice by telephone, or otherwise, to a police agency having jurisdiction over the vehicle that the vehicle is being removed. Within 24 hours after receipt of the notice from the towing agency, the police agency shall determine if the vehicle has been reported stolen and enter the vehicle into the law enforcement information network as an abandoned vehicle. Verification by the police agency of compliance with this section is not necessary and is not a predicate to the entrance of the vehicle into the law enforcement information network.

15.    Pursuant to MCL 257.252a(11), when Plaintiff responds to a private property owner's request to remove a vehicle in Tawas City, it must first contact the TCPD, as the police agency having jurisdiction over the vehicle, that the vehicle is being removed.

16.    On January 15, 2024, Plaintiff responded to a call to remove a vehicle from private property in Tawas City.

17.    Signs were posted on the private property, pursuant to MCL 257.252k, notifying that unauthorized vehicles would be towed at the vehicle owner's expense.

18.    TCPD Sargeant Branden Kirby was contacted by Plaintiff through Central Dispatch in order to provide notice that the vehicle was being removed, as required by MCL 257.252a(10).

19.    Sargeant Kirby arrived at the private property and asked Plaintiff's driver what he was supposed to do, apparently unaware of the requirements imposed on law enforcement by MCL 257.252a(11) to take the vehicle information

or enter the vehicle information into the Law Enforcement Information Network

("LEIN").

20.    In violation of MCL 257.252a(11), Sargeant Kirby refused to take the

vehicle information or enter the vehicle information into the LEIN.

21.    Sargeant Kirby informed Plaintiff that removing the vehicle and

reporting it into LEIN was Plaintiff's job and that if Plaintiff towed the vehicle,

they would be responsible.

22.    Whenever there is a private property impound in Tawas City, Plaintiff

contacts the TCPD pursuant to MCL 257.252a(10) and (11), and the Tawas City

Police refuse to take the vehicle information or to process the vehicle into LEIN.

23.    As a result of TCPD failing and refusing to enter private property

impound vehicles into LEIN pursuant to MCL 257.252a(11), Plaintiff is unable to

legally remove unauthorized vehicles from private property at the request of the

property owner and has lost revenue that would have been generated from that

service.

### Refusal to Allow Vehicle Owner to use Randy's Towing as Preferred Wrecker Services

24.    The City of Tawas City Towing, Wrecker & Impound Policy

("Wrecker Policy") states in pertinent parts:

   a. TCPD shall not recommend one wrecker service over another to
      public safety personnel or the public.

   b. Motorists in need of wrecker services may be asked if they have a
      preferred service. Their request shall be honored so long as the

wrecker service is readily available and public safety is not an immediate concern.

c. Motorists shall also be asked if their insurance company or vehicle's manufacturer offers roadside assistance. If so, they may be given an opportunity to call their service-provider for a wrecker, as long as public safety is not an immediate concern.

d. Individual law enforcement officers have the discretion to request specific wrecker service in accordance with department policy. See **Exhibit 1**

25. On May 2, 2023, Plaintiff's counsel submitted a Freedom of Information Act ("FOIA") request to the Tawas City Police Department requesting, among other things, "Any and all written policies or communications that will not allow an owner of a vehicle involved in an accident to choose their own towing, wrecker or auto club service to tow their vehicle." See **Exhibit 2**.

26. In response to Plaintiff's counsel's request, Tawas City replied:

Any and all written policies or communications that will not allow an owner of a vehicle involved in an accident to choose their own towing, wrecker or auto club service to tow their vehicle. **DENIED. The Tawas City Police Department is not in possession of any policies or communications that will not allow an owner of a vehicle involved in an accident to choose their own towing, wrecker or auto club service to tow their vehicle.**

27. MCL 257.252d(2) states:

Unless the vehicle is ordered to be towed by a police agency or a governmental agency designated by a police agency under subsection (1)(a), (d), (e), or (k), if the owner or other person that is legally entitled to possess a vehicle to be towed or removed arrives at the location where the vehicle is located before the actual towing or removal of the vehicle, the vehicle must be disconnected from the tow truck, and the owner or other person that is legally entitled to possess the vehicle may take possession of the vehicle and remove it without

interference upon the payment of the reasonable service fee, for which
a receipt must be provided.

28.   Plaintiff provides road service towing for the American Automobile
Association ("AAA") to AAA members.

29.   If a AAA member's vehicle is in a wreck, is disabled or is broken
down, the member can call AAA to obtain a local wrecker service and obtain road
service for their vehicle.

30.   On January 11, 2024, Plaintiff was contacted by a AAA member that
had struck a deer on a roadway in Tawas City.

31.   The AAA member requested that Plaintiff come to the scene of the
incident, remove the vehicle and take it to a repair shop.

32.   The TCPD arrived at the scene of the incident and were told that the
AAA member had contacted Plaintiff to come remove their vehicle.

33.   TCPD informed the AAA member that the only towing company that
could remove their vehicle was National City Station ("National City"), which
provides towing services for the TCPD.

34.   National City arrived at the scene of the incident and started hooking
up the AAA member's vehicle.

35.   The AAA member informed the National City driver that they would
not pay because their AAA tower was on its way.

36.   The TCPD and National City driver left the incident scene before
Plaintiff arrived to complete the towing service.

37.   On numerous other occasions, TCPD has refused to allow vehicle owners to contact Plaintiff as their tower of preference.

38.   Despite a) the express language of the Tawas city Towing, Wrecker & Impound Policy; b) the FOIA denial of that any policies or communications exist that would not allow a vehicle owner to choose their own tower; and c) the express language of MCL 257.252d(2),  TCPD officers at nearly every vehicle incident scene not only recommend, but require public safety personnel and the public to use one wrecker service, National City, over Plaintiff when the safety personnel and public request Plaintiff as their tower of choice.

39.    Despite being contacted by its customers to perform wrecker services, Plaintiff was not allowed by TCPD to perform those services, contrary to TCPD's own policy, and Plaintiff was deprived of income from providing such services.

## Interfering with East Tawas Police Jurisdiction

40.   East Tawas Police have a wrecker policy that uses the closest wrecker to the incident scene to remove the vehicle from the scene.

41.   Penske, a vehicle rental company, has been a longtime customer of Plaintiff, whereby if a Penske owned vehicle is wrecked, disabled or broken down, Penske contacts Plaintiff to remove their vehicle from the scene of the incident and transport it to a repair facility.

42.   On or about January 8, 2024, a Penske owned vehicle was broken down on a road in East Tawas.

43. Penske contacted Plaintiff to remove and transport the vehicle.

44. Plaintiff was the closest wrecker to the scene of the breakdown.

45. A police officer that works for both East Tawas Police and TCPD arrived at the scene of the breakdown.

46. Despite the fact that the vehicle was broken down in East Tawas, and not Tawas City, the police officer refused to allow Penske to use Plaintiff to remove and transport the vehicle.

47. Instead, the officer contacted National City and had National City perform the towing services.

48. National City was not the closest wrecker to the scene and took over two hours to arrive.

49. National City incorrectly hooked up the vehicle, damaging it during the towing process, and delivered it to a local repair shop in East Tawas.

50. Despite being contacted by its customer to perform wrecker services, Plaintiff was not allowed by TCPD to perform those services and was deprived of income from providing such services.

**TCPD Cancels Other Law Enforcement Agencies Requests to use Plaintiff**

51. TCPD officers frequently arrive at the scene of an accident where East Tawas Police, Michigan State Police, the Iosco Sheriff's Department or the Arenac County Sheriff's Department have jurisdiction over the accident scene.

52.    At a great number of those incidents, East Tawas Police, Michigan State Police or the Iosco Sheriff's Department have jurisdiction, and the law enforcement agency with the jurisdiction has contacted Plaintiff to perform the recovery, removal and transportation of the accident vehicle.

53.    Despite not having jurisdiction over the accident scene, TCPD officers will cancel Plaintiff as the wrecker service and contact National City to perform the recovery, removal and transportation of the accident vehicle.

54.    Despite being contacted by law enforcement pursuant to MCL 257.252d(1) to perform wrecker services, Plaintiff on these occasions is cancelled and deprived income from providing such services.

55.    On June 7, 2022, Klosowski-Lorenz sent a memo to TCPD officers and staff stating:

  a. "We hold the insurance policies of these wreckers in our rotation as well as have a copy of their rate sheet should someone say the tow prices are unfair.

  b. "If another agency is on scene and requests a specific wrecker, it is our responsibility to interject and make sure the wrecker meets our tow policy since it is our accident scene and we are liable."

56.    Pursuant to MCL 257.252a(6), MCL 257.252a(14) and MCL 257.252e(4), the district court has exclusive jurisdiction over determining whether or not towing fees are unreasonable, not law enforcement.

57.    A vehicle owner's exclusive remedy for contesting the reasonableness of towing and storage fees is to file a petition with the district court pursuant to MCL 257.252a(6) or (14).

58.    No vehicle owner has successfully contested the reasonableness of Randy's Towing's towing and storage fees.

59.    Despite the fact that no court has determined Randy's Towing's fees to be unreasonable, TCPD and Klosowski-Lorenz have told vehicle owners at accident scenes, local insurance company personnel and the general public that Randy's Towing's fees are excessive and unreasonable.

60.    The Wrecker Policy provides for the removal of a wrecker service provider from the wrecker rotation for a variety of reasons, including:

a.  Unreasonable or excessive fees, rates, and charges.

61.    Despite the fact that he district court has the exclusive jurisdiction to determine whether towing and storage charges are unreasonable, the Wrecker Policy gives TCPD the authority to remove a wrecker service from the rotation if the TCPD on its own determines that towing and storage rates are unreasonable.

**TCPD Refusal to Utilize Plaintiff for Heavy-duty Towing**

62.    National City is the only wrecker service that TCPD has placed on its towing rotation for accidents where the vehicle owner does not have a preferred local tower.

63.    National City does not have the vehicles or equipment necessary to perform heavy-duty towing.

64.    A bucket truck, with a boom used to elevate workers to high places, became stuck and in need of assistance to return it to a roadway in Alabaster Township.

65.    A heavy-duty wrecker was needed to perform the service.

66.    Plaintiff has the vehicles and equipment necessary to perform heavy-duty towing and was the closest wrecker service to the site of the incident.

67.    TCPD Chief Matthew Klosowski-Lorenz was at the incident scene and refused to contact Plaintiff to perform the heavy-duty service until after he had contacted wrecker companies from Sterling and Saginaw, which declined to do the travel needed to come to the scene.

68.    After all the out-of-town wrecker services declined, Chief Klosowski-Lorenz left the scene and the vehicle owner had to contact Plaintiff directly to perform the heavy-duty services.

69.    After the services had been performed, Chief Klosowski-Lorenz contacted Plaintiff to ask how much Plaintiff charged for the services provided.

**Chief Klosowski-Lorenz Interferes with Plaintiff's Business**

70.    Matthew Klosowski-Lorenz is the Chief of the TCPD.

71.    In his capacity as chief, Klosowski-Lorenz has gone to local businesses, insurance companies, public meetings and public gatherings to discuss

use of wrecker services.

72.    At those meetings, Klosowski-Lorenz has specifically told the business people, insurance personnel, elected officials and members of the public not to use Plaintiff for towing, wrecker or recovery services.

73.    At those meetings, Klosowski-Lorenz has specifically told the business people, insurance personnel, elected officials and members of the public that Plaintiff charges prices that are too high.

74.    At those meetings, Klosowski-Lorenz has specifically told the business people, insurance personnel, elected officials and members of the public to use National City instead of Plaintiff.

75.    In response to Plaintiff's counsel's FOIA, TCPD produced an email thread between Judy Quarters, a citizen and Klosowski-Lorenz, where Quarters complained about hearing a complaint about Plaintiff's towing rates, to which Klosowski replied:

> Any tow service can apply to be on our rotation, but we have requirements they must follow. One of those is supplying their rates. If they refuse to supply their rates, they will not be placed in our rotation. This is to combat the complaint you brought to our attention. See **Exhibit 4**.

76.    Without reference to a court case determining that Plaintiff's towing and storage rates are unreasonable, Klosowski-Lorenz specifically told Ms. Quarters that Plaintiff's rates were unreasonable.

77.    As a result of Klosowski-Lorenz's statements, local business people, insurance personnel, elected officials and members of the public have been persuaded not to utilize Plaintiff for towing, wrecker and recovery services.

78.    As a result of Klosowski-Lorenz's statements, Plaintiff has lost and will continue to lose revenue and income it could have otherwise generated but for Klosowsi-Lorenz's statements.

**Failure to Report Impound or Abandoned Vehicles to the Secretary of State**

79.    MCL 257.252d(1) authorizes a police agency to "provide for the immediate removal of a vehicle from public or private property to a place of safekeeping at the expense of the last titled owner of the vehicle" in a number of circumstances, including, but not limited to:

    a.  If the vehicle is in such a condition that the continued operation of the vehicle upon the highway would constitute an immediate hazard to the public. {MCL 257.252d(1)(a)}

    b.  If there is reasonable cause to believe that the vehicle or any part of the vehicle is stolen. {MCL 257.252d(1)(d)}

    c.  If the vehicle must be seized to preserve evidence of a crime, or if there is reasonable cause to believe that the vehicle was used in the commission of a crime. {MCL 257.252d(1)(e)}

    d.  If the vehicle has been involved in a traffic crash and cannot be safely operated from the scene of the crash. {MCL 257.252d(1)(k)}

80.    MCL 257.252d(3) – (6) state:

**(3) A police agency that authorizes the removal of a vehicle under subsection (1) shall do all of the following**:

(a) Check to determine if the vehicle has been reported stolen before authorizing the removal of the vehicle.

(b) **Enter the vehicle into the law enforcement information network as an impounded vehicle within 24 hours after ordering the impound of the vehicle**. Except as provided in subsection (5), if the vehicle has not been redeemed by the owner within 7 days after the impound, the towing agency shall notify the police agency of that fact and the police agency shall deem the vehicle abandoned. **The police agency shall enter the vehicle into the law enforcement information network as abandoned within 24 hours of notification by the towing agency, and follow the procedures set forth in section 252a**.

(4) If an impounded vehicle is released before the police agency enters the vehicle into the law enforcement information network as abandoned, the towing agency or custodian shall notify the police agency that authorized the removal within 24 hours of releasing the impounded vehicle.

(5) **A vehicle impounded under subsection (1)(d), (e), or (k) must first be released by the police agency** that authorized the removal prior to the towing agency or custodian releasing the vehicle to the vehicle owner.

(6) Not less than 20 days but not more than 30 days after a vehicle has been released under subsection (5), the towing agency or custodian shall notify the police agency to enter the vehicle as abandoned and **the police agency shall enter the vehicle into the law enforcement information network as abandoned within 24 hours of receiving notice and follow the procedures set forth in section 252a** if the impounded vehicle has not been redeemed.

81.     When an impounded vehicle has not been redeemed, pursuant to MCL 257.252d(3) and (4), the police agency is required to enter the vehicle into LEIN as abandoned, thereby notifying the Michigan Secretary of State ("SOS") of the abandonment so that the SOS can begin the abandonment process and notify the vehicle owner of the abandonment.

82.     MCL 257.252a(5) requires the SOS to issue a Notice of Abandoned Vehicle, Form TR-52 ("TR-52) to the last titled owner and secured party of the vehicle within 7 days after receiving the notice from the police agency that the entered the vehicle into LEIN as abandoned.

83.     The police agency is sent a copy of each TR-52 that is issued that originated from that police agency.

84.     Any vehicle for which a TR-52 has been issued, where that vehicle has not been redeemed, is required to be sold at public auction. See MCL 257.252a(18) and (21); See also MCL 257.252g.

85.     Plaintiff's counsel sent a Freedom of Information Act ("FOIA") the requested "All TR-52 Notices of Abandoned Vehicle in your files for vehicles towed between January 1, 2021 and March 31, 2023. See **Exhibit 2**.

86.     In response to Plaintiff's counsel's FOIA request, TCPD responded "The Tawas City Police Department is not in possession of any TR-52 Notices of Abandoned Vehicles." See **Exhibit 3**.

87.     If a vehicle that has been removed pursuant to MCL 257.252a(10) or MCL 257.252d(1) is not properly reported by the law enforcement agency having jurisdiction, that vehicle does not get processed as abandoned, the vehicle owner does not get notice from SOS of the abandonment and the tower/custodian is unable to sell, auction or otherwise dispose of the vehicle.

88.     The FOIA request further asked for "All auction records for vehicles towed in Tawas City from January 1, 2021 to March 31, 2023 that were set for auction pursuant to MCL 257.252g, including dates, times, vehicles being auctioned and auction results." See **Exhibit 2**.

89.     In response to Plaintiff's counsel's FOIA request, TCPD responded "The Tawas City Police Department is not in possession of any auction records." See **Exhibit 3**.

90.     Based upon the information provided by TCPD in response to Plaintiff's counsel's FOIA, between January 1, 2021 and March 31, 2023, one of the following must have occurred:

   a.   No vehicles were ordered towed by TCPD pursuant to MCL 257.252d(1);

   b.   All vehicles that were ordered towed by TCPD pursuant to MCL 257.252d(1) were redeemed within 7 days of being towed; or

   c.   In violation of MCL 257.252d(3) and (5) and MCL 257.252a(5), TCPD failed to enter the vehicles towed by TCPD pursuant to MCL 257.252d(1) into LEIN and as a result, no TR-52 Notices of Abandoned Vehicles were issued to vehicle owners to notify them of the abandoned status of their vehicle and that it would be sold at auction if not redeemed.

91.     It is not conceivable that a police agency like TCPD with a Towing, Wrecker & Impound Policy:

   a.   Ordered no vehicles towed for over 2 years; or

   b.   Had all vehicles ordered towed be redeemed by the owners for over 2 years;

92.     If no owners of vehicles towed by TCPD pursuant to MCL 257.252d(1) were issued a TR-52 and no vehicles were auctioned, either those vehicles remain on towing company lots or have been disposed of without an auction, in violation of MCL 257.252a(18) and MCL 257.252g.

93.     By failing to report vehicles taken into custody to the pursuant to MCL 257.252d(1) or MCL 257.252a(10) as abandoned, TCPD is acting in violation of MCL 257.252a and MCL 257.252g.

94.     By failing and refusing to enter vehicles into LEIN that private property owners have contacted Plaintiff to remove pursuant to MCL 257.252a(10), TCPD is in violation of MCL 257.252a(11) and (12) and is depriving Plaintiff revenue it would have received from the removal of the vehicles.

**City of Tawas City Towing, Wrecker & Impound Policy Violates State Laws**

95.     On June 21, 2021, the City of Tawas City enacted a Towing, Wrecker & Impound Policy ("Wrecker Policy"). See **Exhibit 1**.

96.     The Wrecker Policy states in pertinent part:

> The service provider will charge its fees and rates for wrecker services to the last titled owner of the vehicle. Fees and rates shall be reasonable and based on local industry standards. All invoices for wrecker services submitted to vehicle owners shall itemize each wrecker service provided and the specific fee or rate charged. Upon request from the vehicle owner, the service provider shall be responsible to provide reasonable documentation to substantiate and justify any fee or rate charged. The service provider must comply with all applicable provisions of law as to abandoned vehicles when seeking or recovering payment for wrecker services. See **Exhibit 1**, p. 4.

97.    The Wrecker Policy further provides reasons for removing a tower

from the Approved Wrecker List, and states (emphasis added):

> Upon request from the City of Tawas City, the Tawas City Police Department, the Tawas City Fire Department, or other agency, a service provider may be removed from wrecker rotation list for any of the following reasons including without limitation [this list is non-exhaustive]:
>
> 1. lmproper, invalid, and/or no license, pennit (sic), insurance, and/or certification(s)
>
> 2. Any violation of this policy
>
> 3. Careless, reckless, or dangerous operations
>
> 4. Inadequate response time(s) or repeat unavailability, or outdated contact infonnation (sic)
>
> 5. Poor condition of equipment and vehicles
>
> 6. Improper or inappropriate attire
>
> 7. Repeat complaints
>
> 8. Stealing, jumping, or taking unsolicited calls
>
> 9. **Unreasonable or excessive fees, rates, and charges**
>
> 10. Unethical business or billing practices
>
> 11. Any act or omission found in the sole discretion of the City or the TCPD to be grounds for removal
>
> If the TCPD receives a written complaint from a public safety agency, a vehicle owner, his or her insurance company, or a law enforcement officer concerning a service provider alleging non-compliance with the tenns (sic) and conditions as stated in the policy, the TCPD shall notify the service provider in writing of the complaint and, if requested by the complainant or the service provider, schedule a

meeting of the City or TCPD to resolve the complaint. Resolution of any complaint may result in an approved service provider being removed from the approved list. The City or TCPD reserves the right to immediately remove an approved service provider from the approved list if the City or TCPD, in its sole discretion, detem1ines that the complaint infringes upon the safety of the public. Any decision of the City or the TCPD may be appealed to the 23rd Judicial Circuit Court for the County of Iosco in Tawas City, Michigan.

98.    MCL 257.252e(4) states:

> The remedies under sections 252 to 254 are the exclusive remedies for the disposition of abandoned vehicles.

99.    MCL 257.252a(6) provides a vehicle owner the exclusive remedy for contesting the reasonableness of towing and storage fees, and states:

> The owner may contest the fact that the vehicle is considered abandoned or the reasonableness of the towing fees and daily storage fees by requesting a hearing and posting a bond equal to $40.00 plus the amount of the accrued towing and storage fees. A request for a hearing shall be made by filing a petition with the court specified in the notice described in subsection (5)(c) within 20 days after the date of the notice. Subject to subsection (8), if the owner requests a hearing, the matter shall be resolved after a hearing conducted under sections 252e and 252f. An owner who requests a hearing may obtain release of the vehicle by posting a towing and storage bond in an amount equal to the $40.00 plus the accrued towing and storage fees with the court. The owner of a vehicle who requests a hearing may obtain release of the vehicle by paying a fee of $40.00 to the court and the accrued towing and storage fees instead of posting the towing and storage bond.

100.    Pursuant to MCL 257.252a(6) and MCL 257.252e(4), a vehicle owner's exclusive remedy for contesting the reasonableness of a wrecker company's towing and storage fees is to file a petition with the District Court.

101.    The Wrecker Policy provides that the TCPD may determine whether a wrecker service's towing and storage charges are reasonable.

102.    The Wrecker Policy provides that the TCPD may remove a wrecker service from the Wrecker List if it determines that the wrecker service's fees are unreasonable.

103.    TCPD has no authority to make determinations as to whether a wrecker service's towing and storage fees are reasonable or not, as that authority lies exclusively with the District Court, and only upon the filing of a petition by the vehicle owner.

104.    The Wrecker Policy is in violation of MCL 257.252e(4) by including the provisions that allow TCPD to 1) determine whether a wrecker service's towing and storage fees are reasonable and 2) remove a wrecker service from the Wrecker List based upon its determination that the wrecker service's towing and storage fees are unreasonable.

## COUNT I – DECLARATORY JUDGMENT: FAILURE TO PROCESS PRIVATE PROPERTY IMPOUND VEHICLES

105.    Plaintiff realleges and incorporates by reference Paragraphs 1-104 of their Complaint.

106.    Under MCR 2.605 in a case of actual controversy within its jurisdiction, this Court may declare the rights and other legal relations of an interested party seeking declaratory judgment, whether or not other relief is or could be sought or granted.

107.    There is an actual controversy within this Court's jurisdiction regarding whether Defendants violate MCL 257.252a(11) and (12) by failing and refusing to enter vehicles removed from private property as abandoned into LEIN and give that notice to the secretary of state.

108.    MCL 257.252a(10) states: "If a vehicle has remained on private property without the consent of the property owner, the owner of the private property may have the vehicle taken into custody as an abandoned vehicle by contacting a local towing agency."

109.    MCL 257.252a(11) requires a towing agency removing a vehicle from private property pursuant to MCL 257.252a(10) to provide notice to a police agency having jurisdiction over the vehicle that the vehicle is being removed.

110.    MCL 257.252a(11) requires the police agency receiving the notice cited in Paragraph 104 to enter the vehicle into LEIN within 24 hours.

111.    MCL 257.252a(12) requires the police agency receiving the notice cited in Paragraph 104 to notify the secretary of state that the vehicle has been taken into custody as abandoned and provide the secretary of state with information regarding the vehicle to process it as abandoned.

112.    On January 15, 2024, Plaintiff was contacted by a private property owner to remove a vehicle that was on their property without their consent.

113.   On January 15, 2024, Plaintiff contacted TCPD Sargeant Branden Kirby to give notice pursuant to MCL 257.252a(11) that the vehicle was being removed from the property.

114.   In violation of MCL 257.252a(11), TCPD Sargeant Branden Kirby refused to enter the vehicle into LEIN.

115.   In violation of MCL 257.252a(12), TCPD Sargeant Branden Kirby refused to notify the secretary of state that the vehicle was being taken into custody as abandoned.

116.   Because TCPD Sargeant Branden Kirby failed and refused to process the vehicle as abandoned, the vehicle owner was not notified by the secretary of state that the vehicle had been removed from the property and was in Plaintiff's custody.

117.   Because TCPD Sargeant Branden Kirby failed and refused to process the vehicle as abandoned, the secretary of state did not send the vehicle owner a Notice of Abandoned Vehicle pursuant to MCL 257.252a(13) informing them that the vehicle had been taken into custody as abandoned and warning them that it could be sold at auction.

118.   Because TCPD Sargeant Branden Kirby failed and refused to process the vehicle as abandoned, the abandoned vehicle process was not followed and Plaintiff could not get paid for the towing and storage of the vehicle.

119. On many other occasions, TCPD has failed and refused to enter vehicles into LEIN when Plaintiff has notified them pursuant to MCL 257.252a(11) that a vehicle was being removed from private property at the request of the property owner.

120. Plaintiff has lost and continues to lose revenue from TCPD failing and refusing to follow the law and enter vehicles being removed from private property as abandoned pursuant to MCL 257.252a(10)-(12).

121. Plaintiff seeks a declaratory judgment the Defendants must follow the requirements of MCL 257.252a and enter all vehicles into LEIN as abandoned that Plaintiff has given and will in the future give TCPD notice pursuant to MCL 247.252a(11) that the vehicle is being removed from private property at the request of the property owner.

122. Plaintiff further seeks a money judgment in the amount of the lost towing and storage fees from all vehicles that TCPD has failed and refused to properly process pursuant to MCL 257.252a(11) and (12).

WHEREFORE, Plaintiffs pray that this Court enter a Declaratory Judgment against Defendants requiring Defendants to process the vehicles pursuant to MCL 257.252a(11) and (12) that Plaintiff is removing from private property at the request of property owners and for damages in an amount to be determined in excess of $25,000, plus interest, costs and attorney fees.

## COUNT II – INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP OR EXPECTANCY – TCPD – PRIVATE PROPERTY IMPOUNDS

123.  Plaintiff realleges and incorporates by reference Paragraphs 1-122 of their Complaint.

124.  The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. *Health Call v. Atrium Home & Health Care*, 268 Mich. App. 83, 89-90; 706 N.W.2d 843 (Mich. 2005).

125.  Plaintiff in the past and currently has business relationships with private property owners to remove unauthorized vehicles from private property pursuant to MCL 257.252a(10)-(16).

126.  Defendant TCPD has knowledge of the existence of the business relationships between Plaintiff and the private property owners.

127.  Defendant TCPD, through its actions of refusing to properly process unauthorized vehicles to be removed from the property, are intentionally disrupting Plaintiff's business relationship with the private property owners in hope that Defendants' actions will cause a termination of the business relationship between

Plaintiff and those private property owners.

128.   Defendant TCPD's actions has caused and will continue to cause actual damage to Plaintiff in reducing or eliminating revenues that would normally be generated to Plaintiff as a result of the business relationships with the private property owners.

129.   Defendant TCPD's actions will cause Plaintiff to lose significant revenues from this business relationship and will continue to cause Plaintiff to lose revenue if Defendant's activities continue.

130.   Defendant TCPD's actions as described above are done with malice and without justification, in an attempt to force Plaintiff to relinquish its business relationship with the owners of the private properties.

WHEREFORE, Plaintiffs pray that this Court enter a judgment in favor of Plaintiff and against Defendants for damages in an amount to be determined in excess of $25,000, plus interest, costs and attorney fees.

## COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP OR EXPECTANCY- TCPD – REFUSING CUSTOMER TOWING PREFERENCE

131.  Plaintiff realleges and incorporates by reference Paragraphs 1-123 of their Complaint.

132.  The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the

relationship or expectancy on the part of the defendant interferer, (3) an intentional

interference by the defendant inducing or causing a breach or termination of the

relationship or expectancy, and (4) resulting damage to the party whose

relationship or expectancy was disrupted. *Health Call v. Atrium Home & Health*

*Care*, 268 Mich. App. 83, 89-90; 706 N.W.2d 843 (Mich. 2005).

133.  The Wrecker Policy states in pertinent parts:

   a.  TCPD shall not recommend one wrecker service over another to public safety personnel or the public.

   b.  Motorists in need of wrecker services may be asked if they have a preferred service. Their request shall be honored so long as the wrecker service is readily available and public safety is not an immediate concern.

   c.  Motorists shall also be asked if their insurance company or vehicle's manufacturer offers roadside assistance. If so, they may be given an opportunity to call their service-provider for a wrecker, as long as public safety is not an immediate concern.

134.  On numerous occasions, as more thoroughly set forth above, motorists

in need of wrecker services in Tawas City have informed the attending TCPD

officer that they wanted Plaintiff to provide the wrecker service.

135.  Despite the express language of the Wrecker Policy, on those

enumerated occasions, TCPD has failed and refused to allow Plaintiff to provide

the requested wrecker services.

136.  Plaintiff had a valid business relationship or expectancy that is not

necessarily predicated on an enforceable contract with the vehicle owner that

requested the wrecker services.

137.  Defendant TCPD had knowledge of the relationship or expectancy, as the request was specifically made to TCPD.

138.  Defendant TCPD, by failing and refusing to allow Plaintiff to provide the requested wrecker services to motorists, has intentionally interfered by inducing or causing a breach or termination of the relationship or expectancy with Plaintiff and the motorist.

139.  Defendant TCPD's actions have caused resulting damage to Plaintiff, whose relationship or expectancy was disrupted, in that Plaintiff could not provide the wrecker service and collect the fees for that service.

140.  Defendant TCPD's actions will cause Plaintiff to lose significant revenues from this business relationship and will continue to cause Plaintiff to lose revenue if Defendant's activities continue.

WHEREFORE, Plaintiffs pray that this Court enter a judgment in favor of Plaintiff and against Defendants for damages in an amount to be determined in excess of $25,000, plus interest, costs and attorney fees.

## COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP OR EXPECTANCY- KLOSOWSKI-LORENZ – REFUSING CUSTOMER TOWING PREFERENCE

141.  Plaintiff realleges and incorporates by reference Paragraphs 1-140 of their Complaint.

142.  The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that

is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. *Health Call v. Atrium Home & Health Care*, 268 Mich. App. 83, 89-90; 706 N.W.2d 843 (Mich. 2005A

143.  As more specifically set forth in Paragraphs 67-75, Defendant Klosowski-Lorenz has specifically told the business people, insurance personnel, elected officials and members of the public not to use Plaintiff for towing, wrecker or recovery services.

144.  Further, Klosowski-Lorenz has specifically told the business people, insurance personnel, elected officials and members of the public to use National City instead of Plaintiff.

145.  Plaintiff had the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract with the aforementioned business people, insurance personnel, elected officials and members of the public who either got in a motor vehicle accident or who were in the position to recommend a wrecker service to a motorist who had been in a motor vehicle accident.

146.  Defendant Klosowski-Lorenz had knowledge of the relationship or expectancy on the part of the defendant interferer, as he specifically mentioned

Plaintiff was a wrecker service that charged unreasonable rates and that should not be used.

147.  Defendant Klosowski-Lorenz intentionally interfered with Plaintiff's business relationship or expectancy by inducing or causing a breach or termination of the relationship or expectancy through specifically mentioning Plaintiff was a wrecker service that charged unreasonable rates and that should not be used and recommending the use of National City instead.

148.  Plaintiff has suffered resulting damage through the disruption of the relationship or expectancy or potential relationship or expectancy with the aforementioned business people, insurance personnel, elected officials and members of the public who either got in a motor vehicle accident or who were in the position to recommend a wrecker service to a motorist who had been in a motor vehicle accident.

149.  Without reference to a court case determining that Plaintiff's towing and storage rates are unreasonable, Klosowski-Lorenz specifically told Ms. Quarters and others that Plaintiff's rates were unreasonable.

150.  As a result of Klosowski-Lorenz's statements, the local business people, insurance personnel, elected officials and members of the public have been persuaded not to utilize Plaintiff for towing, wrecker and recovery services.

151.  As a result of Klosowski-Lorenz's statements, Plaintiff has lost and will continue to lose revenue and income it could have otherwise generated but for Klosowsi-Lorenz's statements.

WHEREFORE, Plaintiffs pray that this Court enter a judgment in favor of Plaintiff and against Defendants for damages in an amount to be determined in excess of $25,000, plus interest, costs and attorney fees.

## COUNT V – VIOLATION OF EXCLUSIVE REMEDIES PROVISION OF MCL 257.252e(4)

152.  Plaintiff realleges and incorporates by reference Paragraphs 1-151 of their Complaint.

153.   The Wrecker Policy provides that the TCPD may determine whether a wrecker service's towing and storage charges are reasonable.

154.   The Wrecker Policy provides that the TCPD may remove a wrecker service from the Wrecker List if it determines that the wrecker service's fees are unreasonable.

155.   MCL 257.252e(4) states:

The remedies under sections 252 to 254 are the exclusive remedies for the disposition of abandoned vehicles.

156.   MCL 257.252a(6) provides a vehicle owner the exclusive remedy for contesting the reasonableness of towing and storage fees, and states:

The owner may contest the fact that the vehicle is considered abandoned or the reasonableness of the towing fees and daily storage fees by requesting a hearing and posting a bond equal to $40.00 plus the amount of the accrued towing and storage fees. A request for a

hearing shall be made by filing a petition with the court specified in the notice described in subsection (5)(c) within 20 days after the date of the notice. Subject to subsection (8), if the owner requests a hearing, the matter shall be resolved after a hearing conducted under sections 252e and 252f. An owner who requests a hearing may obtain release of the vehicle by posting a towing and storage bond in an amount equal to the $40.00 plus the accrued towing and storage fees with the court. The owner of a vehicle who requests a hearing may obtain release of the vehicle by paying a fee of $40.00 to the court and the accrued towing and storage fees instead of posting the towing and storage bond.

157. Pursuant to MCL 257.252a(6) and MCL 257.252e(4), a vehicle owner's exclusive remedy for contesting the reasonableness of a wrecker company's towing and storage fees is to file a petition with the District Court.

158. TCPD has no authority to make determinations as to whether a wrecker service's towing and storage fees are reasonable or not, as that authority lies exclusively with the District Court, and only upon the filing of a petition by the vehicle owner.

159. The Wrecker Policy is in violation of MCL 257.252e(4) by including the provisions that allow TCPD to 1) determine whether a wrecker service's towing and storage fees are reasonable and 2) remove a wrecker service from the Wrecker List based upon its determination that the wrecker service's towing and storage fees are unreasonable.

WHEREFORE, Plaintiff prays that this Court enter a enter a Declaratory Judgment that Defendant TCPD's Wrecker Policy is in violation of MCL 257.252e(4) and enter a Temporary Restraining Order and Preliminary Injunction

against Defendants requiring:

    A. Defendants to cease and desist from making any determination of whether Plaintiff's towing and storage fees are reasonable or unreasonable;

    B. Restraining Defendants from contacting agents, employees or representatives of any entity with which Plaintiff has or may have a contract to provide wrecker services for the purpose of trying to make them cease doing business with Plaintiff;

Plaintiff further prays that this Court enter a Judgment in its favor and against Defendants for damages in an amount to be determined in excess of $25,000, plus interest, costs and attorney fees

## COUNT V – RESTRAINING ORDER AGAINST DEFENDANT TCPD INTERFERING WITH OTHER LAW ENFORCEMENT'S WRECKER POLICIES, CHOICES OR JURISDICTIONS

160.   Plaintiff realleges and incorporates by reference Paragraphs 1-159 of their Complaint.

161.   As more thoroughly stated in Paragraphs 24 through 39, East Tawas Police have a wrecker policy that uses the closest wrecker to the incident scene to remove the vehicle from the scene.

162.   Other law enforcement agencies with jurisdictions neighboring or overlapping Tawas City similarly have wrecker policies that either use closest wrecker to the incident or that specifically use Plaintiff in their wrecker rotation.

163.   On many occasions where TCPD was not the law enforcement agency in charge of the accident scene, TCPD either attempted to take over the accident scene or influenced the law enforcement agency in charge to not use Plaintiff's services, despite the fact that Plaintiff was the closest wrecker to the scene of the breakdown, Plaintiff had been contacted by the motorist or Plaintiff was on the other law enforcement agency's wrecker rotation.

164.   In each of those situations, Defendant TCPD had the law enforcement agency in charge contacted National City and had National City perform the towing services.

165.   In each of those situations, Defendant TCPD interfered with Plaintiff's right to provide the motorist in the accident wrecker services.

166.   In each of those situations, Defendant TCPD interfered with Plaintiff's right to earn compensation for providing wrecker services.

WHEREFORE, Plaintiff prays that this Court enter a Temporary Restraining Order and Preliminary Injunction against Defendants requiring:

   A. Defendants to cease and desist interfering with other law enforcement agencies choice or wrecker services for accidents;

   B. Restraining Defendants from interfering with other law enforcement agencies choice or wrecker services for accidents;

   C. Restraining Defendants from contacting agents, employees or representatives of any entity with which Plaintiff has or may have a

contract to provide wrecker services for the purpose of trying to make

them cease doing business with Plaintiff.

Plaintiff further prays that this Court enter a Judgment in its favor and against

Defendants for damages in an amount to be determined in excess of $25,000, plus

interest, costs and attorney fees.

### COUNT VI- DECLARATORY RELIEF – REFUSAL TO UTILIZE PLAINTIFF FOR HEAVY-DUTY WRECKER SERVICES

167.    Plaintiff realleges and incorporates by reference Paragraphs 1-166 of

their Complaint.

168.    As more thoroughly set forth in Paragraphs 62 through 69, Plaintiff is

the only towing company that provides heavy-duty wrecker service in the Tawas

City area.

169.    As more thoroughly set forth in Paragraphs 62 through 69, when a

motorist requiring heavy-duty towing has been wrecked or disabled in Tawas City,

Defendants have failed and refused to utilize Plaintiff's services for heavy-duty

wrecker services.

170.    Defendants instead have left the motorist requiring heavy-duty

wrecker services to wait an undue amount of time for a wrecker service to arrive

from well outside of the Tawas City area or left the motorist to fend for themselves

rather than contacting Plaintiff.

171.    In each of those situations, Defendants interfered with Plaintiff's right

to provide the motorist in the accident wrecker services.

172.   In each of those situations, Defendants interfered with Plaintiff's right to earn compensation for providing wrecker services.'

WHEREFORE, Plaintiff prays that this Court enter a Temporary Restraining Order and Preliminary Injunction against Defendants requiring:

> A. Defendants to cease and desist refusing to contact Plaintiff to provide heavy-duty wrecker services;
>
> B. Restraining Defendants from interfering with other law enforcement agencies' choice of wrecker services for heavy-duty accidents;
>
> C. Restraining Defendants from contacting agents, employees or representatives of any entity with which Plaintiff has or may have a contract to provide heavy-duty wrecker services for the purpose of trying to make them cease doing business with Plaintiff.

Plaintiff further prays that this Court enter a Judgment in its favor and against Defendants for damages in an amount to be determined in excess of $25,000, plus interest, costs and attorney fees.

## COUNT VII - VIOLATION OF PLAINTIFFS' RIGHT TO EQUAL PROTECTION UNDER THE UNITED STATES CONSTITUTION

170.   Plaintiff realleges and incorporates by reference Paragraphs 1-169 of their Complaint

171.   A corporation is a `person' within the meaning of the equal protection and due process of law clauses. *ANR Pipeline Co. v. Michigan Public Service Commission*, 608 F. Supp. 43, 46 (W.D. Mich. 1984), citing. *Grosjean v. American Press Co.*, 297 U.S. 233 (1936)

172.   Plaintiffs is a "person" for the purpose of the Fourteenth Amendment of the United States Constitution and the Michigan Constitution.

173.   The Fourteenth Amendment of the United States Constitution guarantees equal protection under the law.

174.   The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.

175.   A municipality violates the Fourteenth Amendment when a Plaintiff alleges that they have been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment.

176.   Courts have long recognized that the equal protection guarantee of the 14th Amendment extends to persons who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.

177.   The application for placement on the Tawas City Non-Preference Wrecker call list requires a wrecker service to attach copies of the following documents:

a.   MPSC Certificate of Authority

b.   A list of all vehicles to be used: please specify either "light duty" or "heavy-duty"

c.   Verification that all vehicles are either owned or leased exclusively for use by your wrecker company (copy of title or registration

certificate)

    d.   A copy of the MPSC cab card for each vehicle

    e.   An insurance certificate or summary page showing proof of liability insurance

    f.   Form W-9 showing your taxpayer ID number

    g.   A list of names of all drivers and copies of their current drivers licensees

    h.   The "Acknowledgement" page of the Wrecker Policy with original signature

    i.   Agency fee schedule (See **Exhibit 4**)

178.    In order to file an application for placement on the Tawas City Non-Preference Wrecker call list, Defendants required Plaintiff to provide all items enumerated in Paragraph 177, above.

179.    Specifically, Defendants required Plaintiff to provide the Agency fee schedule, which would include all fees for wrecker services provided by Plaintiff.

180.    Plaintiff refused to provide its Agency fee schedule to Defendants, as Plaintiff suspected that Defendants would use that fee schedule to prejudge whether Plaintiff's fees were unreasonable, in violation of MCL 257.252e(4) and MCL 257.252a -m, as more thoroughly set forth in Count V, above.

181.    Defendants refused to accept Plaintiff's application if Plaintiff did not include the Agency fee schedule.

182.    On May 2, 2023, Plaintiff's counsel submitted a FOIA to Defendant

TCPD requesting, among other things:

- All applications submitted to the Tawas City Police Department for the wrecker rotation service between January 1, 2021 and May 1, 2023.
- All written and/or electronic correspondence, including, but not limited to, letters, emails, texts and/or agreements between the Tawas City Police Department and any towing or wrecker service that provides or has provided towing services to the Tawas City Police Department between January 1, 2021 and May 1, 2023.
- Any and all Tawas City Polic policies, memoranda, letters or other communications regarding rates for towing and wrecker services. See **Exhibit 2**.

183.    In response to the requests set forth in Paragraph 182, Defendant

TCPD produced the application for placement on the Tawas City Non-Preference

Wrecker call list submitted by National City Station ("National City").

See **Exhibit 5**.

184.    The application for placement on the Tawas City Non-Preference

Wrecker call list submitted by National City did not include:

a.    MPSC Certificate of Authority

b.    A list of all vehicles to be used: please specify either "light duty" or "heavy-duty"

c.    Verification that all vehicles are either owned or leased exclusively for use by your wrecker company (copy of title or registration certificate)

d.    A copy of the MPSC cab card for each vehicle

e.    An insurance certificate or summary page showing proof of liability insurance

f.    Form W-9 showing your taxpayer ID number

g. A list of names of all drivers and copies of their current drivers licensees

h. The "Acknowledgement" page of the Wrecker Policy with original signature

i. Agency fee schedule (See **Exhibit 5**)

185.   As Plaintiff's counsel's FOIA request specifically requested all applications, correspondence, and memoranda, letters or other communications regarding rates for towing and wrecker services, the fact that documents and information listed in Paragraph 184 were not provided as a part of the FOIA response means that National City did not submit those documents along with its application.

186.   While TCPD required Plaintiff to submit its rates and "Agency fee schedule" along with its application for placement on the Tawas City Non-Preference Wrecker call list, it obviously did not require the same of National City for its application.

187.   The TCPD application requirements placed upon Plaintiff through their Wrecker Policy and application as applied, treat Plaintiff less favorably than they treat National City, and other similarly-situated entities because Plaintiff is held to much higher standard and requirement than TCPD does to National City, which is the wrecker service that has historically provided wrecker services to TCPD and Tawas City.

188.   TCPD  has intentionally treated Plaintiff differently from others

similarly situated, namely, the National City, in that they have specifically required the Plaintiff to adhere to certain requirements and standards in order to be placed on and remain on the towing rotation for towing for the TCPD while National City, as a similarly situated police authorized tower is not required to adhere to the same requirements and standards.

189.    TCPD, through its towing ordinances, the requirements of the Wrecker Policy and the arbitrarily applied application requirements, treats Plaintiff less favorably than it treats the similarly situated National City.

190.    This less-favorable treatment is not supported by a compelling governmental interest sufficient to justify its enactment or enforcement against Plaintiff, in that it is unsafe, unproductive and dangerous to allow the National City to perform the same towing and storage services without the same requirements that are imposed on Plaintiff.

191.    While the Wrecker Policy and rotation application required the applying tow companies, including Plaintiff, to provide and abide by the items set forth above, National City was not in 2021, at the time that it submitted its application, and is not currently required to do the same, based upon the response to the FOIA request.

192.    As an authorized tower for TCPD, just like Plaintiff desires to be, National City, as a tow company and an authorized police tower, must be required to adhere to the same requirements as those imposed upon the Plaintiff through the

Wrecker Policy and the application.

193.   National City is not required to adhere to the Wrecker Policy and Application requirements and standards imposed on Plaintiff, as specifically set forth above.

194.   Plaintiff is similarly situated to National City in all relevant respects.

195.   Defendants, through their agents, elected officials and the TCPD, have clearly showed animus and ill will toward Plaintiff and the towing industry, as set forth above, which is reflected in the difference in treatment of Plaintiff from National City.

196.   There is no rational basis for the difference in treatment received by Plaintiff from National City.

197.   Plaintiff has suffered damages, including immediate and irreparable injury, as a direct and proximate result of Defendants violation of their rights as alleged herein.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

A. Grant a judgment in their favor and against Defendants in an amount to be determined in excess of $75,000;

B. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 declaring Plaintiff was denied equal protection under the law under the class of one theory by Defendants; and

C.  Award Plaintiff costs, interest and attorney fees pursuant to 42 U.S.C. §1988

and any other and further amount this Court deems just and reasonable.

## <u>DEMAND FOR TRIAL BY JURY</u>

As to those issues triable by jury, Plaintiffs demand a jury trial.

CORCORAN AUSTIN, P.C.

Dated:  October 12, 2025            By:  /s/ James R. Austin
                                                              JAMES R. AUSTIN (P-43400)
                                                              Attorney for Plaintiffs
                                                              6880 Thayer Lake Dr.
                                                              Alden, MI  49612
                                                              248-909-4752